Michael R. Bilotti Jr

Plaintiff, pro se

209 Hilltop Rd

Oakville, CT 06779

(203)560-0790

michael.bilotti@gmail.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT
### 450 Main Street
### Hartford, CT

CIVIL COMPLAINT

**MICHAEL R. BILOTTI JR**                                      :

PLANTIFF                                                       :


**V.**                                                        :        CASE NO. 3:21-cv-00847(MPS)


**CONNECTICUT DEPARTMENT OF CORRECTIONS;**    :
**JUDITH GARCIA, TYRONE IRWIN, GERMAIN**     :
**FLEETING, NICOLE PRIOR, ANTONIO SANTIAGO**  :
**RONALD COTTA, NICK RODRIGUEZ, WILLIAM**    :
**MULLIGAN, SHARONDA CARLOS, ANGEL QUIRROS**  :
**IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES**  :
DEFENDANTS                                                    :

## COMPLAINT

## PRELIMINARY STATEMENT

1.   This is an employment-related action for violations of the Plaintiff's civil rights and other rights by his

state employer, Connecticut Department of Corrections; under Rehabilitation Act of 1973, and Title VII

of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").

2.   The employer engaged unlawful employment discrimination in violation of Rehabilitation Act of 1973

and in violation of Title VII by engaging in discriminatory and retaliatory acts against the Plaintiff based on

his protected status as a union steward under the National Labor Relations Act. The Plaintiff was unlawfully

denied his requests of to investigate the retaliation and harassment by fellow employees, received a 1 day

suspension, Transfer to Chesire CI, another Transfer to Garner CI, removal from his specialized post in an

elite unit within his post, targeted by the internal investigative body of the CT DOC and discriminated and

retaliated against in terms and conditions of employment and harassment, forcing him no choice but to take

multiple transfers to a less desirable location and loss of his specialized post.

## JURISDICTION AND VENUE

3.   This Court has jurisdiction pursuant to 29 U.S.C. § 701, Rehabilitation Act of 1973 and 28 U.S.C. §§

1331, Title VII, and related sections applicable as the United States and/or its agencies are a named

defendant to the action.

4.   The unlawful employment practices alleged below were committed and/or executed by supervisory

personnel and a co-worker of the Connecticut Department of Corrections, ("CT" or "employer").  The

claims arise from events in the Correctional Transportation Unit, 111 Jarvis St, Chesire CT 06410. 2005.

Accordingly, venue lies in the United States District Court for the District of Connecticut under 28 U.S.C.

§ 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

**PARTIES**

5.   I <u>Michael R. Bilotti Jr is</u> a citizen of <u>Connecticut</u> and presently reside at <u>209 Hilltop Rd, Oakville CT</u>
<u>06779</u>

6.   Defendant Judith Rodriguez is currently employed by the State of CT Dept. Of Corrections as a
Correctional Officer presently assigned to CTU- Correctional Transportation Unit at 111 Jarvis St,
Chesire CT 06410. At the time the claim(s) alleged in this complaint arose, the defendant was acting
under color of state. The claims to which this complaint is being file were in fact conducted while in their
individual and official capacities while employees with the State of Connecticut Department of
Corrections.

7.   Defendant Tyrone Irwin is currently employed by the State of CT Dept. Of Corrections as a Correctional
Lieutenant assigned to Central Office, 24 Wolcott Hill Rd, Wethersfield CT 06104. At the time the
claim(s) alleged in this complaint arose, the defendant was acting under color of state. The claims to
which this complaint is being file were in fact conducted while in their individual and official capacities
while employees with the State of Connecticut Department of Corrections.

8.   Defendant Germaine Fleeting is a correctional Captain currently employed by the State of CT Dept. Of
Corrections currently assigned to CTU- Correctional Transportation Unit, 111 Jarvis St, Chesire CT
06410 At the time the claim(s) alleged in this complaint arose, the defendant was acting under color of
state. The claims to which this complaint is being file were in fact conducted while in their individual and
official capacities while employees with the State of Connecticut Department of Corrections.

9.   Defendant Nicole Prior is currently employed by the CT Dept. Of Corrections as a Correctional Captain
presently assigned to the SD- Security Division, 24 Wolcott Hill Rd, Wethersfield CT 06104 At the time
the claim(s) alleged in this complaint arose, the defendant was acting under color of state. The claims to
which this complaint is being file were in fact conducted while in their individual and official capacities
while employees with the State of Connecticut Department of Corrections.

10. Defendant Ronald Cotta is a Warden and Director assigned to the CT DOC Correctional Transportation Unit (CTU); 24 Wolcott Hill Rd, Wethersfield, CT, 06104. At the time the claim(s) alleged in this complaint arose, the defendant was acting under color of state. The claims to which this complaint is being file were in fact conducted while in their individual and official capacities while employees with the State of Connecticut Department of Corrections.

11. Defendant Nick Rodriguez is assigned as the District Administrator responsible for District 2; 944 Highland Ave, Chesire, CT 06410. At the time the claim(s) alleged in this complaint arose, the defendant was acting under color of state. The claims to which this complaint is being file were in fact conducted while in their individual and official capacities while employees with the State of Connecticut Department of Corrections.

12. Defendant William Mulligan is a CT DOC Deputy Commissioner of Operations & Rehabilitive Services Division; 24 Wolcott Hill Rd, Wethersfield, CT, 06104. At the time the claim(s) alleged in this complaint arose, the defendant was acting under color of state. The claims to which this complaint is being file were in fact conducted while in their individual and official capacities while employees with the State of Connecticut Department of Corrections.

13. Defendant Sharonda Carlos is a CT DOC Deputy Commissoner of Administration; 24 Wolcott Hill Rd, Wethersfield, CT, 06104. At the time the claim(s) alleged in this complaint arose, the defendant was acting under color of state. The claims to which this complaint is being file were in fact conducted while in their individual and official capacities while employees with the State of Connecticut Department of Corrections.

14. Defendant Angel Quirros is the CT DOC Commissioner; 24 Wolcott Hill Rd, Wethersfield, CT, 06104. At the time the claim(s) alleged in this complaint arose, the defendant was acting under color of state. The claims to which this complaint is being file were in fact conducted while in their individual and official capacities while employees with the State of Connecticut Department of Corrections.

## JURISDICTION

15. Jurisdiction is asserted pursuant to (CHECK ONE)

**16.** _**X**_ 42 U.S.C. § 1983 (applies to state defendants)

17. ___ Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and 28 U.S.C. § 1331 (applies to federal defendants)

18. Jurisdiction also is invoked pursuant to 28 U.S.C. § 1343(a)(3). (If you wish to assert jurisdiction under different or additional statutes, you may list them below.)

19. U.S. Code Title 42. THE PUBLIC HEALTH AND WELFARE Chapter 21. CIVIL RIGHTS Subchapter I. GENERALLY Section 1983. Civil action for deprivation of rights

20. Title VII, 42 U.S.C. § 2000e-3(a) Retaliation; NATIONAL LABOR RELATIONS ACT, RIGHTS OF EMPLOYEES, United States Code, 5 USC Sections 1501 through 1508; 41 CFR § 60-20.8 - Harassment and hostile work environments

## NATURE OF THE CASE

21. On February 23rd, 2020 the Plaintiff contacted via cell phone Local 387 Union President Sean Howard who is also employed as a Correctional Officer at Chesire Correctional Institution located at 900 Highland Ave in Chesire Connecticut.

22. During the conversation the Plaintiff in detail explained that then Provisional Lieutenant Tyrone Irwin had been in violation of the Connecticut NP-4 Bargaining Contract by working overtime for a unit he was not assigned to specifically the CT DOC Statewide Property Unit.

23. The Plaintiff then explained to Local 387 President that he had knowledge that CT DOC Lieutenant Fernando Antunes assigned to the Correctional Transportation Unit as the First Shift supervisor had been using the state vehicle assigned to CTU to return home while a contractor had been completing work on his home.

24. The Plaintiff then explained to the union president that supervisors at CTU were granting overtime in violation of the union contract and in favoritism to certain employees.

25. On February 27th, 2020 at approximately 7:45 am the Plaintiff entered the office of Correction Officer Pasquale D'Amato located in the Webster Correction building at 111 Jarvis St in Cheshire Connecticut.

26. CO D'Amato assigned to the Correctional Transportation Unit as the Property Officer. At this time the Plaintiff announced to Officer D'Amato that he was a union steward.

27. The plaintiff then asked Officer D'Amato a series of questions relating to the position and jobs that he may or may not have seen regarding the violations performed by Lieutenant Tyronne Irwin working in Property while a provisional Lieutenant.

28. CO D'Amato at the completion of the conversation went to Captain Debra Synott the Statewide Property Liaison and Provisional Lieutenant Tyrone Irwin and informed them of the conversation between the Plaintiff and Officer D'Amato.

29. Officer D'Amato was then immediately ordered to complete a <u>CN-6604 Incident Report No. CTU-2020-02-009(Repot time 2:15pm)</u> in which he recounts parts of the conversation which is protected under the National Labor Relations Act of 1935 and later amended by the Labor Relations Management Act also known as the Taft-Hatley Act of 1946. After CO D'Amato completed the CN-6604 at the request of Lieutenant Tyrone Irwin, LT Irwin then has a meeting with Correction Officer Judith Rodriguez.

30. During this meeting Lieutenant Tyrone Irwin assists CO Judith Rodriguez in writing a CN-6604 Incident report No. CTU-2020-02-008 (Report Time 2:35pm) alleging that the Plaintiff had been involved in a conversation in violation of Administrative Directives 2.22 Sexual Harassment. At this time CO Rodriguez and LT Irwin create a narrative claiming that the Plaintiff had been engaged in a conversation with officer whom she did not know.

31. CO Rodriguez falsified a legal document in violation of CT DOC A.D. 2.17 Employee Conduct, Violation of C.G.S. Title 42a-5-109 Fraud and Forgery. CTU-2020-002-008

32. Lieutenant Tyrone Irwin the escorted the Plaintiff into the administration area along with Correctional Officer Maurice Robinson who was present in the capacity as a union steward to witness any events that may transpire and Lieutenant Eugen Darczyn administration Lieutenant for the Correctional Transportation Unit.

33. During the meeting LT Irwin read from a document in a manilla folder that the Plaintiff is being charges with violation of A.D. 2.17 employee conduct and A.D. 2.22 sexual harassment. At this time LT Irwin requested that the Plaintiff complete a CN-6605 Supplemental Incident Report.

34. The Plaintiff requested on what the report would be based on. LT Irwin says a conversation that took place on February 24th, 2020 at the UConn Facility. The Plaintiff requested clarification as this was 3 days later and there has been no record of any incident taking place. LT Irwin would state only that it was about a conversation.

35. On February 28th, 2020 the Plaintiff delivered to the Officer of the Commissioner of the Department of Corrections a summary of the events from February 27th, 2020 and the actions of LT Irwin and CO Rodriguez were knowingly and maliciously carried out in an attempt to retaliate against the Plaintiff for his qualified disclosure to Local 387 Union President as outlined in C.G.S. 4-61(d)(d) Sec. 4-61dd. Whistleblowing. Disclosure of information to Auditors of Public Accounts. Investigation by Attorney General. Proceedings re alleged retaliatory personnel actions. Report to General Assembly. Large state contractors. (b) (1) No state officer or employee, as defined in section 4-141, no quasi-public agency officer or employee, no officer or employee of a large state contractor and no appointing authority shall take or threaten to take any personnel action against any state or quasi-public agency employee or any employee of a large state contractor in retaliation for such employee's or contractor's disclosure of information to (A) an employee of the Auditors of Public Accounts or the Attorney General under the provisions of subsection (a) of this section; (B) an employee of the state agency or quasi-public agency where such state officer or employee is employed; (C) an employee of a state agency pursuant to a mandated reporter statute; the violations and theft of overtime in contrast to the provisions within the NP-4 bargaining contract.

36. After delivering the Incident report no. CO-2020-02-003 to the Commissioner's office the Plaintiff was contacted by Lieutenant Fernando Antunes and told that he was being drafted to second shift and that he needed to report back to Webster and upon doing so report to his office.

37. Once the Plaintiff arrived back to Webster CI and reporting to LT Antunes office the pair had a brief conversation.

38. As the conversation concluded LT Antunes requested that the Plaintiff stay back as Lieutenant Irwin wanted to see him and he should have a union steward present.

39. Present for this was Correctional Officer Jeanie Alphonso also a Local 387 union steward.

40. At this time LT Irwin again reading from a paper contained in a manilla folder a statement saying that the Plaintiff again was being charged with another violation of A.D. 2.17 Employee conduct.

41. LT Irwin requested that the Plaintiff complete a CN-6605 based on the conversation that took place on the morning of February 27th, 2020 with CO Pasquale D'Amato. After the Plaintiff completed his supplemental incident report, he handed it in to LT Irwin and continued onto his route for second shift.

42. On Monday March 2nd, 2020 I received a phone call from LT Antunes again asking when I the Plaintiff return back to CTU Base that I report to his office.

43. Upon doing so LT Antunes informs me that LT Irwin and Captain Debra Synott requested I report to them for a third time in 3 days and requested that I change my paperwork to their satisfaction. Correctional Officer Manny Negron also a Local 387 union steward was present for this.

44. At this time, I contacted Local 387 Union President Sean Howard and informed him that I was being Targeted and Harassed by supervisors because of the actions taken while working in a protected role as a union steward.

45. I informed him that these actions were in direct violation of federal law being the National Labor Relations Act and Anti-Union animus. During this time LT Tyrone Irwin forward all complaints to Director Ronald Cotta.

46. During this time, I had taken ridicule from staff members who had gotten word that I had been charged with sexual harassment.

47. On March 19th, 2020 at approximately 8:01 am after attending CTU Roll Call and listening to enough of the whispers and ridicule and watching the reputation I had worked so hard for continue to get tarnished I contacted the Director of Affirmative Action Holly Darin via email.

48. I received a response that morning that she received my complaint outlining the targeting and harassment I had been receiving in retaliation for my whistleblowing.

49. Later that Day towards the end of shift CO Alphonso pulled me aside in the hallway and told me to stay clear of Judith Rodriguez that she was targeting me.

50. Shortly after that conversation Lieutenant Eugen Darczyn approached me and handed me an involuntary transfer letter from Director Ronald Cotta for a pending investigation.

51. In the Letter I was ordered to report to Chesire Correctional Institution as of March 20th, 2020.

52. I asked what this pertained to and he replied he did not know.

53. I contacted the investigator for the affirmative action unit and was told that they had no idea.

54. They had no record of anybody contacting them regarding any situation with me and that I initiated this investigation. Investigator Judith Garcia immediately scheduled an interview with me on March 20th, 2020 for 11:00 am.

55. During the interview I let her know that I had been targeted and harassed on numerous occasions for which were documented on incident reports contained in Security Division Investigation SD20-031. She asked me if I was aware that LT Irwin and CO Judith Rodriguez filed an incident report no. CTU-2020-003-002 against me for violation of A.D. 2.17 Employee Conduct more specifically Harassment.

56. I told her that I heard something but was not sure because as outline by the CT DOC Administrative Directive 1.10 I did not complete a supplemental incident report for a allege incident.

57. I was not approached by any member of the administration regarding any further incident.

58. She proceeded to confirm that in fact they did submit an incident report and this would be the third incident that LT Irwin initiated. She asked why and I explained what I reported and that this was in retaliation of what I reported to the union president.

59. On September 15th, 2020 I received a copy of Security Division Investigation SD20-031 in preparation for an upcoming Loudermill between myself and the Department of Corrections.

60. After receiving the report, I began to read and study the report as this was the first time that I had gotten to see any material other than reports I filed.

61. Contained in the report Director Ronald Cotta falsified his report when he writes that on March 2nd 2020 that he referred the incident directly to the affirmative action unit. As of March 19th 2020, approximately 17 days after he states that he refers the matter to the proper investigative authority Ms. Judith Garcia confirms that in fact Ronald Cotta did not refer nor do they have any documentation showing that he did. Ms. Garcia goes further to state that the Plaintiff in fact opened the Affirmative Action Unit Complaint.

62. It is at this time that CO Bilotti was transferred pending investigation to Chesire CI.

63. Once at Chesire CI, CO Bilotti received ridicule from fellow employees and label as a bad officer who did not like working with women.

64. Prior to this incident Bilotti's reputation as written in his NP-4 Performance Appraisal for period 03/01/2019 to 02/28/20 to include the dates of the alleged incident "Officer Bilotti completes all work assigned to him. Officer Bilotti is always willing to help out with any additional work outside his normal job duties", "Officer Bilotti deals effectively with conflict and communicates well with his supervisors", "Officer Bilotti needs little to no direction to perform his job duties and is always willing to help his supervisors and peers"

65. In or around October of 2020 CO Bilotti submitted a CHRO-Whistleblower complaint to the State of Connecticut Office of Public Hearings.

66. In or around November of 2020 Warden Denise Black of Chesire CI called CO Bilotti into her office.

67. At this time Warden Black told CO Bilotti that the Attorney General's office contacted her regarding my case pending with the Office of Public Hearing.

68. It is at this time that Warden Walker requested any and all evidence that CO Bilotti had pertaining his complaint filed.

69. Warden Walker stated that this action was in fact on behalf of the Office of the States Attorney General for CT.

70. CO Bilotti told her he would not furnish that information to her and that her actions were unethical. He then reported these actions to the CT DOC in the form a CN-6604 Incident Report submitted to the administrative Captain. CO Bilotti also reported this action to the Office of Public Hearing and to the States Attorney general's Office.

71. In accordance with CT DOC Administrative Directive 6.6 reporting of incidents CO Bilotti wrote a number of incident reports reporting violations of the directives for CT DOC by members of CTU.

72. At this time CO Steven Dechello in capacity as a Local 387 union steward attempted to deliver those reports to Captain Germain Fleeting.

73. Captain Fleeting in a failure to supervise and in violation of Administrative Directives he refused to accept those reports and physically threw them at CO Dechello.

74. We then submitted them through Chesire CI.

75. Security Division specifically Captain Nicole Prior completed her investigation, never actually investigating any complaints written by the Plaintiff as seen in SD20-031 and found CO Bilotti Copiable of lying during an investigation and actions equating to harassment.

76. Captain Prior failed to include a supplemental incident report from CO Bilotti as outlined in the agencies Administrative Directives.

77. Captain Prior failed to investigate all individuals present during alleged incident.

78. Captain Prior Failed to investigation the violations of AD's contained in Judith Garcias paperwork.

79. Officer Bilotti in or around January of 2021 received a one-day suspension and another transfer this time to Garner CI institution in violation of the CT NP-4 Bargaining Contract.

## CAUSE OF ACTION

80.  I allege that the following of my constitutional rights, privileges, or immunities or my rights under a federal statute have been violated and that the following facts form the basis of my allegations.

## CLAIM 1:

**81.  Title VII, 42 U.S.C. § 2000e-3(a) Retaliation (Title VII prohibits an employer from retaliating against an employee who complains about discrimination and/or harassment. "Under 42 U.S.C. § 2000e-3(a), an employer may not retaliate against an employee who has either opposed any practice made unlawful under Title VII or has made a charge or participated in any matter in an investigation of sexual harassment.");**

**82.  NATIONAL LABOR RELATIONS ACT, RIGHTS OF EMPLOYEES, United States Code, 5 USC Sections 1501 through 1508;**

**83.  41 CFR § 60-20.8 - Harassment and hostile work environments;**

**84.  Violation of the State Employees Contract NP-4 bargaining Unit**

**85.  (Against Tyrone Irwin, in his individual and official capacity, and the State of Connecticut Department of Corrections**

86.  Title VII, 42 U.S.C. § 2000e-2(a) Hostile Work Environment

87. The Plaintiff re-alleges and incorporates herein by reference all of the foregoing allegations. CO Bilotti engaged in protected activity, as outlined in the National Labor Relations Act as well as Conn. Gen. St. Sec. 5-270 State Employees Relations Act among other ways, when he reported to AFSCME COUNCIL 4 LOCAL 387 union President Sean Howard the alleged violations of the union contract and alleged theft of state property by LT Irwin, LT Antunes, CAPT Pafumi assigned to the CT DOC Correctional Transportation Unit.

88. At all relevant times, Connecituct Department of Corrections Correctional transport Unit (CTU) was charged with running and operating transportation for all inmates housed by the state of CT. While Correctional Officer (CO)Bilotti was on CTU, CT DOC CTU controlled aspects of CO Bilotti's terms, conditions, and privileges of employment, and as such, was, along with CT DOC Bilotti under Title VII.

89. CO Bilotti was subjected to repeated false allegations of harassment, humiliation, and in timidation in the workplace from members of CTU during his time on the CTU.

90. CO Bilotti made it known that the harassment was unwelcome. The continued acts by the Defendant were reported by CO Bilotti to not only the Office of the Commissioner of Correction as well as the CT DOC Affirmative Action Unit. The harassment described was both severe and/or pervasive and altered the conditions of Bilotti's employment. Bilotti did find, and a reasonable person would have found, the conduct offensive.

91. CO Bilotti suffered harassment at the hands of supervisors assigned to CTU, Lieutenant Tyrone Irwin, Captain Germain Fleeting and Director of Tactical Operation-CTU Ronald Cotta, as well as his co-workers in CTU.

92. CO Bilotti's supervisors, LT Fernando Antunes and LT Eugene Darczyn, both witnessed and were otherwise aware of the harassment and did nothing to prevent or correct the behavior.

93. CT DOC otherwise failed to exercise reasonable care to prevent or correct harassing behavior on the CTU. CT DOC did not provide CO Bilotti with an anti-discrimination policy. In spite of this, Bilotti complained of the harassment to CT DOC Commissioners office and his The Affirmative Action Unit,

Holly Darin. CT DOC failed to conduct an investigation into Bilotti's complaints of harassment to the Commissioner's Office.

94. For the foregoing reasons, CT DOC discriminated against CO Bilotti because of his actions conducted in the duties of his protected class as a union steward in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), among other ways, by: a. Subjecting Bilotti to harassment based on harassment while he was working on the CTU, which created an intimidating, hostile, and/or offensive work environment that adversely affected the terms, conditions, and privileges of Savage's employment; and b. Failing or refusing to take reasonable or appropriate steps to prevent or correct promptly the harassment; and c. Negligently failing after actual or constructive knowledge of the harassment to take prompt and adequate action to stop it.

95. CT DOC and Tyrone Irwin's actions might well have dissuaded a reasonable worker from making or supporting a discrimination claim.

**Claim 2:**

**96. Title VII, 42 U.S.C. § 2000e-3(a) Retaliation (Title VII prohibits an employer from retaliating against an employee who complains about discrimination and/or harassment. "Under 42 U.S.C. § 2000e-3(a), an employer may not retaliate against an employee who has either opposed any practice made unlawful under Title VII or has made a charge or participated in any matter in an investigation of sexual harassment.");**

**97. NATIONAL LABOR RELATIONS ACT, RIGHTS OF EMPLOYEES, United States Code, 5 USC Sections 1501 through 1508;**

**98. 41 CFR § 60-20.8 - Harassment and hostile work environments; C.G.S. 4-61(dd) Violation of the State Employees Contract NP-4 bargaining Unit**

**99. (Against CT DOC Correction Officer Judith Garcia, in her individual and official capacity, and the State of CT Department of Corrections)**

100.     The Plaintiff re-alleges and incorporates herein by reference all of the foregoing allegations. Case

101.     CT DOC and CO Judith Garcia knew of CO Bilotti's complaints of the alleged theft of the misuse of state vehicles, the theft of overtime, the violations of overtime hiring as outlined by the State of CT Employee Bargaining Contract NP-4., acted adversely against CO Bilotti, including, among other ways, fabricating a false sexual harassment campaign against CO Bilotti documented on CN 6604 Report # CTU-2020-02-008 to include being less then truthful, withholding the names of witnesses in order to impede an investigation, providing false testimony in order to smear his reputation and pressuring Director Ronald Cotta to discipline and/or terminate him. Judith Rodriguez continues her campaign when she along with Tyrone Irwin and Germain Fleeting provided CN6604 Report No. CTU-2020-003-02 containing false allegations. CT DOC and Judith Garcia's actions might well have dissuaded a reasonable worker from making or supporting a discrimination claim.

102.     Defendants took the actions described because of CO Bilotti's protected activity.

103.     For the foregoing reasons, Defendants have discriminated against CO Bilotti in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by retaliating against Savage for engaging in protected activity.

**Claim 3:**

**104.     Title VII, 42 U.S.C. § 2000e-3(a) Retaliation (Title VII prohibits an employer from retaliating against an employee who complains about discrimination and/or harassment. "Under 42 U.S.C. § 2000e-3(a), an employer may not retaliate against an employee who has either opposed any practice made unlawful under Title VII or has made a charge or participated in any matter in an investigation of sexual harassment.");**

105.    **NATIONAL LABOR RELATIONS ACT, RIGHTS OF EMPLOYEES, United States Code, 5 USC Sections 1501 through 1508;**

106.    **41 CFR § 60-20.8 - Harassment and hostile work environments;**

107.    **C.G.S. 4-61(dd); Violation of the State Employees Contract NP-4 bargaining Unit**

108.    **(Director Antonio Santiago, Captain Nicole Prior, State of Connecticut Department of Corrections, and aforementioned Defendants)**

109.    The Plaintiff re-alleges and incorporates herein by reference all of the foregoing allegations. State of Connecticut Department of Corrections Retaliation Against CO Bilotti

110.    5 USC Sections 1501 through 1508, CT DOC Administrative Directives 1.13 Code of Ethics 4. Ethical Conduct. All Department employees shall comply with the requirements set forth in the Connecticut State Ethics Commission Code of Ethics for Public Officials. Furthermore, all Department employees shall comply with all the provisions of this directive regarding their ethical conduct and obligations as employees. 3. Treat, with respect and dignity, the public, staff, and offenders in accordance with Administrative Directive 2.17, Employee Conduct. 4. Ensure a workplace free of sexual harassment, discrimination, and workplace violence in accordance with Administrative Directives 2.1, Equal Employment Opportunity and Affirmative Action; 2.2, Sexual Harassment, 2.17, Employee Conduct and 2.22, Workplace Violence Prevention Policy. 5. Be firm, fair, and consistent in the performance of all their assigned duties. 6. Comply with all federal and state laws, in addition to the regulations of the Department in accordance with Administrative Directive 2.17, Employee Conduct.

111.     CO Bilotti engaged in protected activity, as outlined in the National Labor Relations Act as well as Conn. Gen. St. Sec. 5-270 State Employees Relations Act among other ways, when he reported to AFSCME COUNCIL 4 LOCAL 387 union President Sean Howard the alleged violations of the union contract and alleged theft of state property by LT Irwin, LT Antunes, CAPT Pafumi assigned to the CT DOC Correctional Transportation Unit.

112.     State of Connecticut Department of Corrections, Office of the Commissioner, Director Ronal Cotta, was aware of CO Bilotti's complaints.

113.     Shortly after CO Bilotti's complaints were made, CT DOC began engaging in a series of materially adverse actions against Officer Savage that would have dissuaded a reasonable person from complaining of discrimination. Among other ways, as outlined in paragraphs  through  and  through , CT DOC required Bilotti was the only individual involved in CT DOC SD20-031 incident to transfer from CTU to Chesire Correctional Facility, attempted to change his shift to second shift, change his hours of work from a 5 days on 2 days off to a 5 days on 3 days off, remove him from his specialized assignment of CTU Special Transportation Officer, subjected him to a disciplinary investigation, and, ultimately, a 1 day suspension and another transfer this time to Garner CI.

114.     CT DOC took the aforementioned adverse actions against CO Bilotti including subjecting him to harassing behavior from co-workers, transferring CO Bilotti from CTU, subjecting CO Bilotti to an investigation, subjecting CO Bilotti to a 1 Day suspension, Transferring Bilotti again to Garner CI because of his protected activity.

115.     Captain Nicole Prior during her investigation in her official capacity as an investigator for CT DOC Security Division failed to a conduct a fair and unbiased investigation b) Captain Prior failed to interview witnesses involved in the allegations, specifically CO Will Perez, CO Sean Newton, CO Josean Baez and any other individuals present at the time of the allegations.

116.     Captain Nicole Prior failed to investigate any and all claims of retaliatory actions taken against CO Bilotti for his activities in a protected class. As observed during SD Investigation SD20-031 and can be seen during CO Bilotti's Interview.

117.      . Because of his protected activity, CT DOC smeared CO Bilotti's reputation, falsely accused him of sexual harassment and filing a false report, and harassed, threatened, suspended and transferred him, as described in Paragraphs through. CT DOCs actions might well have dissuaded a reasonable worker from making or supporting a discrimination claim.

118.      CT DOC purported reasons for its retaliatory activity are pretext for discrimination.

119.      For the foregoing reasons, Defendants have discriminated against CO Bilotti in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

**Claim 4:**

**120.      Title VII, 42 U.S.C. § 2000e-3(a) Retaliation (Title VII prohibits an employer from retaliating against an employee who complains about discrimination and/or harassment. "Under 42 U.S.C. § 2000e-3(a), an employer may not retaliate against an employee who has either opposed any practice made unlawful under Title VII or has made a charge or participated in any matter in an investigation of sexual harassment.");**

**121.      NATIONAL LABOR RELATIONS ACT, RIGHTS OF EMPLOYEES, United States Code, 5 USC Sections 1501 through 1508;**

**122.      41 CFR § 60-20.8 - Harassment and hostile work environments;**

**123.      C.G.S. 4-61(dd);**

**124.      Violation of the State Employees Contract NP-4 bargaining Unit**

**122. (Against CT DOC Germain Fleeting, in his individual and official capacity)**

125.      The Defendant individually in their actions and collectively as a whole violated the Plaintiffs rights protected under NATIONAL LABOR RELATIONS ACT, RIGHTS OF EMPLOYEES, United States Code, 5 USC Sections 1501 through 1508, CT DOC Administrative Directives 1.13 Code of Ethics 4. Ethical Conduct. All Department employees shall comply with the requirements set forth in the Connecticut State Ethics Commission Code of Ethics for Public Officials. Furthermore, all Department employees shall comply with all the provisions of this directive regarding their ethical conduct and obligations as employees. 3. Treat, with respect and dignity, the public, staff, and offenders in accordance with Administrative Directive 2.17, Employee Conduct. 4. Ensure a workplace free of sexual harassment, discrimination, and workplace violence in accordance with Administrative Directives 2.1, Equal Employment Opportunity and Affirmative Action; 2.2, Sexual Harassment, 2.17, Employee Conduct and 2.22, Workplace Violence Prevention Policy. 5. Be firm, fair, and consistent in the performance of all their assigned duties. 6. Comply with all federal and state laws, in addition to the regulations of the Department in accordance with Administrative Directive 2.17, Employee Conduct.

126.      Sec. 7. [§ 157.] Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3) [section 158(a)(3) of this title]

127.      CO Bilotti engaged in protected activity, as outlined in the National Labor Relations Act as well as Conn. Gen. St. Sec. 5-270 State Employees Relations Act among other ways, when he reported to AFSCME COUNCIL 4 LOCAL 387 union President Sean Howard the alleged violations of the union contract and alleged theft of state property by LT Irwin, LT Antunes, CAPT Pafumi assigned to the CT DOC Correctional Transportation Unit.

128.      State of Connecticut Department of Corrections, Office of the Commissioner, Director Ronal Cotta, was aware of CO Bilotti's complaints.

129.    Shortly after CO Bilotti's complaints were made, Captain Germain Fleeting began engaging in a series of materially adverse actions against CO Bilotti that would have dissuaded a reasonable person from complaining of discrimination. Among the ways include, coercing CO Judith Garcia into completing legal documents CN 6604 Incident Report # CTU-2020-03-002, Captain Germain Fleeting refusal, in violation of CT DOC Administrative Directive to accept Incident Reports written by the Plaintiff and attempted to be delivered to CTU by Local 387 Union Steward Steven Dechello, CT DOC required Bilotti was the only individual involved in CT DOC SD20-031 incident to transfer from CTU to Chesire Correctional Facility, attempted to change his shift to second shift, change his hours of work from a 5 days on 2 days off to a 5 days on 3 days off, remove him from his specialized assignment of CTU Special Transportation Officer, subjected him to a disciplinary investigation, and, ultimately, terminated him.

**Claim 5:**

130.    **Title VII, 42 U.S.C. § 2000e-3(a) Retaliation (Title VII prohibits an employer from retaliating against an employee who complains about discrimination and/or harassment. "Under 42 U.S.C. § 2000e-3(a), an employer may not retaliate against an employee who has either opposed any practice made unlawful under Title VII or has made a charge or participated in any matter in an investigation of sexual harassment.");**

131.    **NATIONAL LABOR RELATIONS ACT, RIGHTS OF EMPLOYEES, United States Code, 5 USC Sections 1501 through 1508;**

132.    **41 CFR § 60-20.8 - Harassment and hostile work environments;**

133.    **C.G.S. 4-61(dd);**

134.    **Violation of the State Employees Contract NP-4 bargaining Unit**

135.    **(Against CT DOC Director Ronald Cotta, in his individual and official capacity)**

136.      The Defendant individually in their actions and collectively as a whole violated the Plaintiffs

rights protected under NATIONAL LABOR RELATIONS ACT, RIGHTS OF EMPLOYEES, United

States Code, 5 USC Sections 1501 through 1508, CT DOC Administrative Directives 1.13 Code of Ethics

4. Ethical Conduct. All Department employees shall comply with the requirements set forth in the

Connecticut State Ethics Commission Code of Ethics for Public Officials. Furthermore, all Department

employees shall comply with all the provisions of this directive regarding their ethical conduct and

obligations as employees. 3. Treat, with respect and dignity, the public, staff, and offenders in accordance

with Administrative Directive 2.17, Employee Conduct. 4. Ensure a workplace free of sexual harassment,

discrimination, and workplace violence in accordance with Administrative Directives 2.1, Equal

Employment Opportunity and Affirmative Action; 2.2, Sexual Harassment, 2.17, Employee Conduct and

2.22, Workplace Violence Prevention Policy. 5. Be firm, fair, and consistent in the performance of all

their assigned duties. 6. Comply with all federal and state laws, in addition to the regulations of the

Department in accordance with Administrative Directive 2.17, Employee Conduct.

137.      Shortly after CO Bilotti's complaints were made, Director Ronald Cotta began engaging in a

series of materially adverse actions against CO Bilotti that would have dissuaded a reasonable person

from complaining of discrimination. Among the ways include, Failure to investigate CO Bilotti's

allegations of retaliation based on actions protected under federal law National Labor Relations Act as

also outline in Conn. Gen. St. Sec. 5-270 State Employees Relations Act. Among other violations

included but not limited to Falsifying an investigation in order to prejudice the investigative body to

inflict mental and emotional harm to CO Bilotti and ensure improper discipline. Failure to report the

alleged incident(s) to the proper investigative bodies with CT DOC.

## PRAYER FOR RELIEF

138.     WHEREFORE, the Plaintiff prays that the Court grant the following relief:

139.     (a) award all appropriate monetary relief including where applicable, to CO Bilotti in an amount to be determined at trial to make whole for any loss suffered as a result of the discrimination and retaliation as alleged in this complaint;

140.     (b) award compensatory damages to CO Bilotti to fully compensate him for the pain and suffering caused by Defendants' discrimination and retaliation as alleged in this complaint, pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a;

141.     (c) enjoin Defendants from further discrimination and retaliation against CO Bilotti

142.     (d) order Defendants to develop and implement appropriate and effective measures to prevent discrimination and retaliation, including but not limited to implementing appropriate policies and procedures applicable to employees working on CET, and implementing adequate training to all employees and officials;

143.     (f) order any further relief necessary to make CO Bilotti whole to include reassigning CO Bilotti back to the Correctional Transportation Unit and back to the shift at the time of incident being first shift

144.     (g) award such additional relief as justice may require, together with the Plaintiffs' cost and disbursements in this action

145.     (h) reversal and removal of all disciplinary action the plaintiff's personnel file

## JURY DEMAND

146.     The Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the

Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

Respectfully submitted,

*Michael R Bilotti Jr*
June 22, 2021

Michael R. Bilotti Jr

Plaintiff, pro se

209 Hilltop Rd

Oakville, CT 06779

(203)560-0790

michael.bilotti@gmail.com